NOTICE

Decision filed 12/28/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180468-U

NO. 5-18-0468

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 14-CF-546 |
| | ) | |
| JORDAN X. HALE, | ) | Honorable |
| | ) | William G. Schwartz, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*: Because the defendant is correct that the circuit court erred when it summarily dismissed the defendant's petition for postconviction relief at the first stage of proceedings, we reverse the order of the circuit court of Jackson County and remand for the appointment of counsel for the defendant, and for further proceedings on the defendant's petition.

¶ 2    The defendant, Jordan X. Hale, entered a negotiated plea of guilty to one count of armed robbery in exchange for a sentence of 26 years' imprisonment in the Illinois Department of Corrections, to be followed by 3 years of mandatory supervised release. He now appeals the first-stage, or summary, dismissal of his petition for postconviction relief. For the following reasons, we reverse the order of the circuit court of Jackson County and remand for the appointment of counsel for the defendant, and for further proceedings on the defendant's petition.

1

I. BACKGROUND

¶ 4     On December 31, 2014, the defendant was charged, by a first amended information, with two counts of armed robbery and two counts of home invasion. On March 17, 2015, in anticipation of the defendant entering a negotiated plea of guilty to some of the charges against him, a "402 conference" was held during which the defendant's appointed counsel noted that the defendant had informed counsel that the defendant was not aware that certain statements he made to police officers in the processing area of the Carbondale Police Department building were being audio and video recorded. Counsel noted that signage existed in the processing area, alerting people to the fact that audio and video recording was taking place, and noted that discovery materials that counsel had received from the State alleged that police officers had read the defendant his *Miranda* rights prior to the defendant's statements in the processing area. Counsel told the trial judge that counsel had informed the defendant that counsel thought the defendant's statements "would come into evidence at a trial," but that the defendant had "some questions about that" and did not "necessarily" agree with counsel's assessment.

¶ 5     When given the opportunity by the trial judge to address the court, the defendant stated, "I feel like it ain't—they didn't tell me—they was just asking me a lot of questions and I got confused, and I was no way aware that it was voice [*sic*] and audio recorded." He added that he felt like he was being taken advantage of. When the trial judge pointed out that the defendant had been given his *Miranda* rights, and that signage about audio and video recording was present in the processing area, the defendant responded, "I can't read." The trial judge did not respond to the defendant's statement, instead stating that if there were to be a motion to suppress filed, it would be denied, and that the defendant's statements would be admitted at a trial.

¶ 6     On March 25, 2015, after a jury had been selected for the defendant's trial, the defendant entered a negotiated plea of guilty to one count of armed robbery, in exchange for a sentence of

26 years' imprisonment in the Illinois Department of Corrections, to be followed by 3 years of mandatory supervised release. When asked by the trial judge if the defendant both read and understood the written guilty plea agreement form, the defendant answered "yes" to both points. When asked if he had any questions about the form, the defendant answered that he did not. The factual basis provided for the defendant's plea included the following: that on December 29, 2014, the defendant, along with another individual, forced his way into an apartment in Carbondale and at gunpoint stole electronic items, a wallet, and a cell phone from the two women who lived in the apartment. As the defendant exited the apartment, the victims "heard approximately four pops that they believe[d] were gunshots." The trial judge accepted the plea agreement, then admonished the defendant as to his appellate rights, including the requirement that the defendant first attempt to withdraw his guilty plea in the trial court.

¶ 7 Approximately two years later, on March 13, 2017, the defendant filed, *pro se*, a motion for reduction of sentence, based upon purportedly newly discovered evidence. The motion was denied, and the defendant appealed. The defendant subsequently moved to dismiss his appeal, and this court granted the defendant's request. See *People v. Hale*, No. 5-17-0122 (Oct. 25, 2017).

¶ 8 Thereafter, on June 25, 2018, the defendant filed, *pro se*, a postconviction petition (petition) in which he raised claims of, *inter alia*, ineffective assistance of trial counsel, due to the failure of trial counsel to investigate the defendant's mental health history and request a fitness hearing for the defendant. The petition alleged there were "bona fide" questions with regard to his fitness, based upon "some mental issues in the past," including (1) "a history of mental illness," (2) diagnoses of bipolar disorder and "attention hyper deficit disorder," (3) prior hospitalization and medication of the defendant for mental health issues, and (4) learning disabilities and "emotional behavior disorder." The petition alleged that the defendant did "not understand or comprehend the issues in front of him or in his plea deal of guilty," and that counsel was ineffective

3

because counsel "failed to show that the petitioner was on the right medications, for him to understand his plea deal in front of him." The petition alleged that the defendant "may have had a mental defect" which would have prejudiced the defendant "at the time of plea deal," which in turn demonstrated "ineffective assistance of counsel." The petition further alleged that trial counsel was in a hurry, which was why counsel did not properly investigate the defendant's mental health history or otherwise properly investigate the case prior to the scheduled trial.

¶ 9    On August 27, 2018, the judge who accepted the defendant's guilty plea entered a written order in which he summarily dismissed the postconviction petition at the first stage of proceedings. In the written order, the trial judge stated that the petition did not include any affidavits, records, or other supporting evidence, or an explanation for the absence of said documents. The trial judge also ruled that the defendant's allegations were contradicted by the record, and that the petition was "patently without merit." This timely appeal followed.

¶ 10                                II. ANALYSIS

¶ 11    This court reviews *de novo* the first-stage, or summary, dismissal of a petition for postconviction relief. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage of proceedings on such a petition, a defendant "need only present a limited amount of detail in the petition." *Id*. As the *Hodges* court noted, "[b]ecause most petitions are drafted at this stage by defendants with little legal knowledge or training," reviewing courts will view "the threshold for survival as low." *Id*. A defendant need only state the "gist" of a constitutional argument, a requirement that is met if a defendant alleges "enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act," even if the petition as drafted at the first stage "lacks formal legal arguments or citations to legal authority." *Id*. The trial court may dismiss a petition at the first stage as "frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *Id*. at 11-12. Moreover, "[w]here defendants are acting *pro se*, courts should review their

4

[first-stage] petitions 'with a lenient eye, allowing borderline cases to proceed.' " *Id*. at 21 (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)). Claims of ineffective assistance of counsel may not be dismissed at the first stage of proceedings " 'if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *People v. Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17). In other words, there is no requirement that a defendant "demonstrate" or "prove" the defendant's ineffective assistance of counsel claim at the first stage of proceedings; instead, "first-stage postconviction petitions alleging ineffective assistance of counsel are judged by a lower pleading standard." *Id.* ¶¶ 19-20.

¶ 12    The defendant in this case points out in his opening brief on appeal that in his *pro se* petition, he alleged, *inter alia*, that he received ineffective assistance of trial counsel because counsel did not investigate the defendant's mental health history and did not ask for a hearing on the defendant's mental fitness. He notes that in the petition, he alleged multiple details about his prior mental illnesses, and alleged that he did "not understand or comprehend the issues in front of him or in his plea deal of guilty." He contends these allegations are sufficient, under the above legal standards, to survive a first-stage dismissal. With regard to trial counsel's duty to investigate the defendant's mental health history and request a fitness hearing, the defendant contends that the defendant's March 17, 2015, statements—on the record, in the presence of trial counsel—that the defendant became confused when questioned by police, and that he could not read, should have prompted trial counsel to investigate to make certain the defendant was fit to enter his guilty plea (or go to trial) the following week. With regard to how he was prejudiced by the alleged ineffective assistance of counsel, he contends that "[i]t is at least arguable that further inquiry into [the defendant's] mental illness, along with the evidence that he had an inability to understand questions during his police interview and that he could not read, would have raised a bona fide

5

doubt as to his ability to understand the nature of his plea agreement and to his ability to plead guilty." With regard to the lack of affidavits or other supporting documentation to accompany the petition, the defendant points out that such documentation is not needed at the first stage of proceedings if the allegations in the petition are supported by facts already in the record (see, *e.g.*, *People v. Hanks*, 335 Ill. App. 3d 894, 898-99 (2002)), and that in this case the defendant's statements in the record that he became confused when questioned by police, and that he could not read, provide all the support necessary at this stage of the proceedings. He also notes the well-established point of law that when ineffective assistance of counsel is alleged, the failure to produce an affidavit from counsel in which counsel admits counsel's own ineffectiveness is excused at the first stage of proceedings. See, *e.g.*, *People v. Ramirez*, 402 Ill. App. 3d 638, 641-42 (2010).

¶ 13    The State's sole response on appeal is that (1) the failure to attach supporting documentation to the petition is fatal to the petition, and (2) the record positively rebuts the allegations in the petition. With regard to the first part of this response, the State posits that even in the cases cited by the defendant in his opening brief on appeal, some type of documentation was attached to the petitions in question, whereas in this case no documents were attached. The State suggests there are various hypothetical documents the defendant could have attached to his petition in this case, and contends it is a statutory violation to fail to attach at least some type of documentation to a petition, regardless of what that documentation may be. With regard to the second part of the State's response, the State contends that the trial judge was correct in his ruling that the allegations in the petition were positively rebutted by the record, because the record shows that when asked by the trial judge if the defendant both read and understood the written guilty plea agreement form, the defendant answered "yes" to both points, and that when asked if he had any questions about the form, the defendant answered that he did not. The State suggests that this brief

6

exchange on the date the defendant entered his plea of guilty negates the statements the defendant made a week earlier about becoming confused when questioned by police, and about his inability to read. The State asserts that "the record as a whole reflects that [the] defendant was able to effectively communicate with counsel and with the court, and that he understood the nature of the proceedings."

¶ 14    In his reply brief, the defendant aptly notes that the hypothetical documents the State suggests he should have filed with the petition—such as an affidavit or report from a medical professional detailing his cognitive disabilities at the time of his guilty plea—would have been available only if counsel had properly investigated his mental health issues. In other words, the alleged ineffective assistance of counsel is the reason such documents could not be produced at the time the petition was filed: because no investigation was conducted by counsel, and therefore no such documentation was generated. The defendant also reiterates his position that supporting documentation is not required—by statute or by case law—at the first stage of proceedings if the allegations in a petition are supported by facts already of record, and that no affidavit is required in which counsel avers counsel's own ineffectiveness. He also reiterates his position that his allegations are not positively rebutted by the record.

¶ 15    In light of the low threshold, discussed in detail above, necessary for a defendant's *pro se* allegations in a postconviction petition to state the gist of a constitutional claim, and thus to survive a first-stage dismissal—and in light of the fact, also discussed above, that at the first stage a defendant need not *prove* the defendant's ineffective assistance of counsel claim—we conclude that the petition does in fact state the gist of a constitutional claim of ineffective assistance of counsel, is adequately supported at this stage of the proceedings by the facts already of record in this case, is not positively rebutted by the record, and therefore is sufficient to survive a first-stage summary dismissal.

7

¶ 16    We agree with the defendant that in *People v. Hanks*, 335 Ill. App. 3d 894, 899 (2002), our colleagues in the First District correctly determined that providing supporting information by way of attachments at the first stage of proceedings is not an absolute requirement, because the Illinois Supreme Court has never established a blanket rule that a petition must always include attachments to survive summary dismissal. As the defendant notes, the *Hanks* court held that a petition meets pleading requirements when "the record, the contents of the court file, and the exhibits allow for objective and independent corroboration of the allegations." *Id*. In this case, the defendant is correct that the defendant's statements, already in the record, that he became confused when questioned by police, and that he could not read, make his claims of ineffective assistance of counsel for failure to investigate the defendant's mental health and request a fitness hearing at least *arguable*, which is all that is necessary at this point in the proceedings. This is particularly true in this case because of the difficulties the defendant points to in terms of securing additional documentation to attach to the *pro se* petition at the time it was filed—such as an affidavit or report from a medical professional detailing his cognitive disabilities at the time of his guilty plea, or an affidavit from trial counsel averring trial counsel's own ineffectiveness. Thus, the State's first argument in support of affirming the summary dismissal of the petition fails.

¶ 17    We turn, therefore, to the State's second argument. We recognize that if this case involved only the question of whether the defendant can read, then the trial judge's ruling that the record (which, as explained above, contains the defendant's affirmative statements that he both read and understood the written guilty plea agreement form) contradicts the defendant's assertion that he cannot read would be more persuasive. However, the petition's allegations about the mental fitness of the defendant at and around the time of his guilty plea by their very nature call into question the validity of any statements made by the defendant at and around the time of that plea, including his statements that he both read and understood the written guilty plea agreement form. In light of the

8

petition's allegations, we conclude that the brief exchange between the trial judge and the defendant about the defendant's understanding of the court proceedings and the content of his guilty plea is not sufficient to lead to the conclusion that the record positively rebuts the allegations in the petition about the mental fitness of the defendant. See, *e.g.*, *People v. Brown*, 236 Ill. 2d 175, 190-91 (2010) ("brief exchanges" with trial judge wherein defendant asserted that defendant understood the trial judge's instructions or admonitions "do not positively rebut" allegations in postconviction petition as to defendant's mental fitness and "do not conclusively demonstrate an ability to understand the proceedings or assist in the defense").

¶ 18    We also agree with the defendant that the principal case cited by the State in support of its argument on this point, *People v. Rosado*, 2016 IL App (1st) 140826, ¶¶ 45-49, is factually distinguishable from this case, because in *Rosado*, the record showed that the defendant was actually examined by medical professionals and found fit to proceed, and the record also showed that the defendant's extensive interactions with his own counsel and with the court demonstrated that he understood the proceedings and his part therein—in other words, the defendant's claims in *Rosado* were positively rebutted by the record. As discussed above, the record in this case does not positively rebut the defendant's claims for purposes of a summary dismissal of the petition, because the trial judge's interactions with the defendant in this case were simply too fleeting, perfunctory, and devoid of detail to create such a record. Therefore, the State's second argument fails as well.

¶ 19    We note again that claims of ineffective assistance of counsel may not be dismissed at the first stage of proceedings " 'if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17). In other words, in contrast to the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984), there is no

9

requirement at the first stage of proceedings on a postconviction petition that a defendant "demonstrate" or "prove" the defendant's ineffective assistance of counsel claim; instead, "first-stage postconviction petitions alleging ineffective assistance of counsel are judged by a lower pleading standard." *Tate*, 2012 IL 112214, ¶¶ 19-20. Moreover, the defendant is correct in his assertion of the general principle of law that "[i]n order to establish prejudice for failure to request a fitness hearing, the petition must arguably show that 'facts existed at the time of trial that would have raised a *bona fide* doubt of his ability "to understand the nature and purpose of the proceedings against him or to assist in his defense." ' *People v. Harris*, 206 Ill. 2d 293, 304 (2002)." In this case, we agree with the defendant that, with regard to his *pro se* claims on these points, it is at least *arguable* that his counsel's performance fell below an objective standard of reasonableness, and it is at least *arguable* that the defendant was prejudiced as a result. Thus, to the extent the trial judge held the petition to a higher, incorrect standard at the first stage of proceedings, the trial judge erred in doing so. See *Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 20    For these reasons, we agree with the defendant that the trial judge's summary dismissal of the petition was improper. As a result, the entire petition must advance to the second stage of proceedings. See, *e.g.*, *People v. Johnson*, 377 Ill. App. 3d 854, 858, 860 (2007) (if *any* claims in a postconviction petition are not subject to summary dismissal, the entire petition must be docketed for second-stage proceedings); see also, *e.g.*, *People v. Henderson*, 2014 IL App (2d) 121219, ¶ 41 (same). At this point, of course, the defendant has not fully developed his arguments. If, after consultation with appointed counsel at the trial court level on remand, the defendant wishes to persist in his claims, he should have the opportunity to file an amended petition (see, *e.g.*, *People v. Boclair*, 202 Ill. 2d 89, 100 (2002)), and the State should have the opportunity to respond thereto, including by raising arguments not raised in this appeal, should the State choose to present such arguments to the trial court.

¶ 21                                    III. CONCLUSION

¶ 22    For the foregoing reasons, we reverse the order of the circuit court of Jackson County and remand for the appointment of counsel for the defendant, and for further proceedings on the defendant's petition.


¶ 23    Reversed and remanded.